**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**RANDALL KEITH NOAH**                                                                                  **PLAINTIFF**

**V.**                                     **CASE NO. 4:14CV00563-BD**

**CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration**                                                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Randall Noah appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      Background**

On April 29, 2011, Mr. Noah protectively filed for benefits due to degenerative disc disease, depression, alcoholism, and right knee pain.  (Tr. 158)  Mr. Noah's claims were denied initially and upon reconsideration.  At Mr. Noah's request, an Administrative Law Judge ("ALJ") held a hearing on April 30, 2013, at which Mr. Noah and a Vocational Expert ("VE") appeared and testified.  (Tr. 52-78)  Mr. Noah was represented by counsel at the hearing.

The ALJ issued a decision on June 11, 2013, finding that Mr. Noah was not disabled under the Act.  (Tr. 15-27)  On June 18, 2014, the Appeals Council denied Mr. Noah's request for review, making the ALJ's decision the Commissioner's final decision.

1

(Tr. 6-8)  On September 23, 2014, Mr. Noah filed this appeal.  (Docket entry #2)  The parties have filed their briefs, and the case is ready for decision.[1]

Mr. Noah, who was nearly forty-two years old at the time of the hearing, has a ninth-grade education and past relevant work as a stocker and carpenter.  (Tr. 56, 73)

## II.   Decision of the Administrative Law Judge[2]

The ALJ found that Mr. Noah had not engaged in substantial gainful activity since June 21, 2008, and had the following severe impairments: lumbar spine degenerative disc disease, hypertension, osteoarthritis, bilateral knee pain, and depression with anxiety.  (Tr. 17-18)  The ALJ also found that Mr. Noah did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3]  (Tr. 18)

According to the ALJ, Mr. Noah retained the residual functional capacity ("RFC") to perform unskilled, light work with a sit/stand option, but he could not climb ladders,

---

[1] The parties have consented to the jurisdiction of a magistrate judge.  (#4)

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. § 416.920(a)-(g) and 20 C.F.R. § 404.1520(a)-(g).

[3] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 426.930(d), 416.925, and 416.926.

ropes, or scaffolds or be exposed to hazards.  He could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  (Tr. 20)

The VE testified that jobs available with these limitations were small-products assembler, marketing clerk, and small-parts packer.  (Tr. 75-76)  Accordingly, the ALJ determined that Mr. Noah could perform a number of jobs in the national economy and was not disabled.

## III. Analysis

### A. Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision.  *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).  Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."  *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion."  *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B.   Mr. Noah's Argument for Reversal

Mr. Noah asserts that the Commissioner's decision should be reversed because the ALJ: (1) improperly discounted his subjective complaints and (2) did not consider obesity as a severe impairment.  (Docket entry #11)

### 1.   Subjective Complaints

Mr. Noah argues that the ALJ discounted his subjective complaints without considering the evidence as a whole.  To the contrary, there was substantial evidence in the record as a whole supporting to support the ALJ's decision to discount Mr. Noah's credibility.

In September 2009, Mr. Noah advised his treating physician that he had degenerative disc disease and wanted pain medication.  The notes indicated that previously he had been a no-show for an MRI and was not interested in getting testing.  The notes also reflect that Mr. Noah was manipulative during the discussions.  (Tr. 294)  It is well-settled, that "[a] failure to follow a recommended course of treatment . . . weighs against a claimant's credibility."  *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

As Mr. Noah points out, a May 2010 MRI revealed lumbar disc degeneration with "disc bulge causing bilateral mild to moderate narrowing of neural formina" and moderate facet joint degeneration.  (Tr. 252)  The MRI also revealed "no significant spinal canal compromise . . . ."  (Tr. 252)  These findings were consistent with an MRI from June 2007, suggesting that the impairment had not worsened.  (Tr. 250)

4

At a March 2012 interview, a state examiner noticed that Mr. Noah sat with no signs of pain, and showed no signs of pain when getting up and leaving. (Tr. 338) The next month, there was "no observed gait disturbance," and Mr. Noah denied fatigue and shortness of breath. (Tr. 348, 350-351) In April 2012, he described his pain as "intermittent." (Tr. 350) A treating physician again noted, in April 2013, that Mr. Noah was "able to sit comfortably on the examination table without difficulty or evidence of pain." (Tr. 340)

In June 2012, the doctor noted full range of motion without pain, but there was lower back tenderness with pain radiating down the leg. (Tr. 347) Mr. Noah received a steroid injection and was told to return for another injection "in one month or sooner if indicated." (Tr. 347) He did not return until August 2012, which suggests the steroid treatment helped with his pain. Additionally, the records reveal that Mr. Noah's medications were working well to control his pain. (Tr. 339, 348, 350) He even testified that his medication was helpful. (Tr. 61) "An impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

After an August 30, 2012 appointment, Mr. Noah was told to return in two months. He returned in February 2013 – six months later. (Tr. 343, 346) This failure to return as directed and to seek regular treatment weighs against Mr. Noah's credibility regarding the severity of his impairments. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (An ALJ may weigh the credibility of a claimant's subjective complaints of pain by

considering multiple factors, including whether or not the claimant seeks regular medical treatment.).

Mr. Noah reported in August of 2011 that he missed an appointment at the UAMS pain clinic "because he could not afford the $50." (Tr. 286)  In April 2012, Mr. Noah advised his doctors that he could not afford physical therapy for his back. (Tr. 352) Mr. Noah was a long-time smoker and, at the 2013 hearing, he testified that he still smoked. Smoking is an expensive habit that can be considered when weighing the credibility of Mr. Noah's complaint regarding the severity of his impairments. *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (rejecting claimant's position that he could not afford medication when "there is no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking cigarettes to help finance pain medication.").

Additionally, Mr. Noah repeatedly was advised to quit smoking, quit drinking, and start a diet and exercise routine. (Tr. 235, 238-239, 255, 262, 295, 300, 308, 352)  He has managed only to quit drinking. (Tr. 62)  Smoking cessation and weight loss both could have alleviated the severity of Mr. Noah's impairments, but he did neither. *Mouser v. Astrue*, 5454 F.3d 634, 638 (8th Cir. 2008) (holding that "there is no dispute that smoking has a direct impact on [claimant's] pulmonary impairments.  Thus, the ALJ appropriately considered [his] failure to stop smoking in making his credibility determination.").

Although Mr. Noah complained of lower back pain for several years, doctors did not recommend surgery.  Rather, Mr. Noah has undergone only conservative treatment consisting of pain medications. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding

6

that an ALJ may rely on the fact that a claimant has undergone only conservative treatment when evaluating the severity of the impairments).

Mr. Noah testified about using a cane, but at numerous appointments, doctors noted that he could ambulate well without assistive devices. (Tr. 61-62, 340, 344, 350)

Accordingly, the ALJ properly discounted Mr. Noah's subjective claims in making his RFC determination, and his decision is supported by substantial evidence on the record as a whole.

### 2. Obesity

Mr. Noah also argues that the ALJ erred in not considering his obesity severe, even though "the record consistently shows BMIs above the level of 30." (Docket entry #11)

First, Mr. Noah did not allege obesity as an impairment on his application; nor did he bring it up during the hearing. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). At the hearing, Mr. Noah testified that he was about six feet tall and weighed around 219 pounds, but he did not suggest that his weight was causing problems. (Tr. 58)

Second, Mr. Noah testified that his weight had been about the same through the years – a statement supported by the medical records. (Tr. 41, 253, 260, 346, 347, 351) The fact that Mr. Noah has weighed around 215 pounds for years suggests that his obesity was not an impairment that has worsened or kept him from working. "[A] condition that was not disabling during working years and has not worsened cannot be used to prove present disability." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

7

## IV. Conclusion

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision. There is no legal error.

Accordingly, Mr. Noah's appeal is DENIED, and the Clerk of Court is directed to close the case. The hearing scheduled for November 19, 2015 is cancelled.

IT IS SO ORDERED, this 4th day of August, 2015.

_____
UNITED STATES MAGISTRATE JUDGE